NAPOLEON HAYWOOD v. STATE OF MISSISSIPPI.

[43 South., 614.]

1. CRIMINAL LAW AND PROCEDURE. *Murder. Evidence.*

Where the accused in a prosecution for murder resting entirely on circumstantial evidence has introduced testimony which would prove an alibi, if credited, it is error not to admit evidence to the effect that disreputable characters in whose company the deceased had been on the night of his death left the state on the following day.

2. SAME. *Circumstantial evidence. Instruction.*

Circumstantial evidence is inferior to the testimony of eyewitnesses, and it is error to instruct in a murder trial, where the evidence for the defense would prove an alibi, if credited, that it is as good as any other kind of evidence and that whenever it generates full conviction of guilt beyond a reasonable doubt, the jury should act on such evidence as readily as on any other.

FROM the circuit court of, second district, Perry county.

HON. WILLIAM H. COOK, Judge.

Haywood, the appellant, and another, were indicted for the murder of one Lydell; there was a severance, and appellant was separately tried, convicted of the murder, and sentenced to the penitentiary for life, from which conviction and sentence he appealed to the supreme court.

The dead body of Lydell was found in a pond in the vicinity of Hattiesburg. The appellant and one George Shelton, both negroes, were arrested, and subsequently indicted for murder. On the trial of appellant it appeared that deceased, on the evening before his death, was intoxicated, harassed by financial troubles and vexed by litigation; that he had been out of work for several weeks; and, on the evening mentioned, he employed the appellant, a hack driver, to carry him to a house of ill fame, where he drank whiskey in company with the in-

mates of the place, after which he left, riding in the hack, driven by another than appellant, and his body was subsequently discovered in the pond. Physicians were introduced as witnesses on the trial and their testimony conflicted as to whether judging from the condition of the body when taken from the water and examined by them, the deceased was alive or dead when put in the pond. There was sufficient testimony, if credited, to have proved an alibi for appellant.

Gertrude Evans, an inmate of the resort, after testifying that Lydell, the deceased, in company with one Tutt and another person, spent some time at the place in company with several of the women, was asked by counsel for appellant if these persons had left Hattiesburg, and why they left; whether some of the women who were at the resort that night left the next morning for Birmingham, Alabama; and whether the women who were present that night were absent the next day. To all of these questions the state objected, and the objections were sustained.

*Luther James,* for appellant.

The evidence under which appellant was convicted was all circumstantial. And, for this reason, it was error in the lower court to refuse the defense the right to show by the appellant's witness, Gertrude Evans, an inmate of the house of prostitution, that she knew that some of the women who were at the house of prostitution on the Thursday evening when the deceased was there, left early the next morning for Birmingham, Alabama. This witness was also not permitted by the lower court to answer the question, propounded by counsel for appellant, whether she did not know that the women who were inmates of the resort had practically all left the state by the next day. It is apparent that her answers would have shown that the inmates of this resort where Lydell was last seen alive by reputable witnesses had left the state on the morning after the alleged murder, and have not since been in this state. Such proof was

material in view of the connection of the time and place when and where deceased was last seen alive, according to the evidence.

The court erroneously granted an instruction for the state to the effect that circumstantial evidence in law is as good as any other kind of evidence, and that whenever circumstantial evidence rises high enough in the scale of belief to generate full conviction in the minds of the jury of the guilt of the defendant beyond a reasonable doubt, the jury should act upon such evidence as readily as they would in any other kind of evidence. *Pitts* v. *State,* 43 Miss., 472; *Bourn* v. *State,* 5 South. Rep., 626. The testimony should have been left to the jury unfettered by an instruction pointing out, as it were, the conclusion desired by the district attorney. The true test of the weight of circumstantial evidence is that it excludes all reasonable doubt of the defendant's innocence. *Beavers* v. *State,* 58 Ind., 530; *Algheri* v. *State,* 25 Miss., 584; *James* v. *State,* 45 Miss., 572.

The case should be reversed on the facts, as was the case of *Allen* v. *State,* 40 South. Rep., 744, wherein this court laid down the proposition that in a case supported entirely by circumstantial evidence, where no motive is shown, a verdict of guilty, in the face of unimpeached testimony for the state, would, nevertheless, be reversed.


*A. C. Cherry,* on the same side.

The evidence does not connect appellant with the death of Lydell in sufficient degree to show that appellant was in any way guilty of Lydell's death. Under the evidence, Lydell may have come to his death: (1) From death by natural means in the house of prostitution, and have been subsequently placed in the pond by the frightened inmates; or (2) from having walked by inadvertence over the steep bank of the pond, and been drowned before he could, in his drunken condition, save himself; or (3) he may have committed suicide, being worried by his financial troubles and grieved over the death of the

party whose funeral notice was found in his pockets afterwards; or (4) he may have been put in the pond and there drowned by some one who thought he was dead, and who never intended to murder him.    These are not unreasonable deductions from the evidence.   *Robinson* v. *State,* 16 Tex. App., 347.

The action of the lower court in refusing to permit the witness, Gertrude Evans, to testify that all of the inmates, suddenly, without notice or warning, did the irregular thing of fleeing to another state the day after, Lydell was at the resort, was error.    This was a resort where intoxicants were sold; where prostitutes stayed; which Lydell had, all the day long, been making his base of operations, buying whisky and beer to excess, and where he was last seen by different persons, in company with a woman of the place.

The instruction for the state, criticised in the brief of my colleague, is certainly erroneous, under the circumstances.    It is a dangerous thing, in any instance, to convict a man on circumstantial evidence alone.    Moreover the instruction is argumentative.    The weight and sufficiency of the evidence is for the jury alone.

*George Butler,* assistant attorney-general, for appellee.

Although complaint is made by appellant as to the action of the lower court in excluding the proffered evidence of the witness, Gertrude Evans, we submit that the evidence in no way connects the parties, concerning whom inquiry was made, with the murder; nor does it show that they were present at or near the scene of the homicide; and hence it was, therefore, immaterial whether these parties were within or without the state.

It is doubtful whether the instruction granted to the state, and of which complaint is made by appellant, was in any way prejudicial to the appellant.    *Dean* v. *State,* 85 Miss., 40, s.c., 37 South., 501; *Browning* v. *State,* 30 Miss., 656.

WHITFIELD, C. J., delivered the opinion of the court.

The case is one of the most mysterious we have ever had to

examine.   Whether Lydell was dead or alive when his body
was thrown into the pond, and, if dead, when and where and by
whom and under what circumstances he had been killed, is left
in absolute uncertainty and mystery by this record.   Whether
he got into a difficulty with the two white men, who according
to some of the testimony were quarreling with him about $15
which they claimed he owed them, or whether the defendant
and Geo. Shelton killed him, or, having nothing to do with
killing him were hired to dump his body into the pond, no man
can, with any satisfaction, tell from this record.   The physi-
cians who were introduced are in conflict as to whether, from
the condition of the dead body when examined, the deceased was
alive or not when put into the pond.   If the testimony for the
defense is to be believed, Haywood has proved a clear alibi.
If there is one thing that may be said to appear with certainty,
it is that Lydell and Haywood were both thoroughly drunk by
seven o'clock on the Thursday evening before he was killed.   It
appears from the testimony of Davis that Lydell was in
great financial trouble, was in litigation, had been out of work
three or four weeks, and that, though he had not taken a drop
of whisky in said three or four weeks, he on that day acted, to
quote his language, "very foolish and crazy."   This case is one
depending on absolutely circumstantial evidence, and in this
uncertain state of the testimony the court refused to permit the
defense to show by the witness Gertrude Evans whether she
knew that some of the women who were at the house of prosti-
tution Thursday night left the next morning for Birmingham,
Ala., and whether she knew that some of the parties who
were in that house that Thursday night left the state the next
day, and whether she knew that the same women that were
there that night were not there the next day.   It is clearly
shown by the evidence that the deceased had been to this house
two or three times that day, and that he had gotten money from
Mrs. Davis, the wife of his landlord, who kept his money for
him, three times that day, the last time about seven o'clock in

the evening, and immediately left his boarding house.    It is altogether probable that he returned to this house of prostitution, and, so far as this evidence discloses, there is nothing to show, if he did so return, what happened to him thereafter at that house.    We think, in the very peculiar circumstances surrounding this man's death, the court should have allowed these questions to have been answered.    Light might very probably have been thrown on the transaction, and the mystery satisfactorily cleared up.

The court also gave for the state the following instruction:

"The court instructs the jury for the state that circumstantial evidence in law is as good as any other kind of evidence, and, whenever circumstantial evidence rises high enough in the scale of belief to generate full conviction in the minds of the jury of the guilt of the defendant beyond a reasonable doubt, the jury should act upon such evidence as readily as they would in any other kind of evidence."    We think the statement that circumstantial evidence, in law, is as good as any other kind of evidence, is a fundamental misconception, and in this case was fatal error, and most probably misled the jury in making up their verdict.    It is undoubtedly true that, when circumstantial evidence excludes every other reasonable hypothesis than that of guilt beyond all reasonable doubt, the jury should convict; but it is equally true that, where the evidence is positive and direct by eyewitnesses to a killing, that kind of evidence, thus establishing the killing, is not the same kind of evidence as evidence wholly circumstantial from which the killing may be deduced.    Circumstantial evidence is a different kind of evidence, wholly different from evidence consisting of the direct and positive testimony of eyewitnesses.    In the one case, if the jury believe the testimony of the witnesses, the fact of the killing is established by their direct statements that they saw the party killed.    In the other case, if the jury believe the party was killed beyond all reasonable doubt, they do so believe it from a chain of circumstances, the absence of any one link in which

chain destroys the value of all other circumstances, no matter how absolutely proven. There has never been a better illustration of the weakness of circumstantial evidence than that which tells us that "it is no stronger than the weakest link in the chain." This essential difference in the very nature of the two kinds of testimony, circumstantial and direct, is such and so clear that it is not the law that circumstantial evidence is as good as any other kind of evidence. True enough, if, as stated, the circumstantial evidence excludes every other reasonable hypothesis than that of guilt beyond all reasonable doubt, the jury are just as much bound to convict as if the guilt had been shown by the direct evidence of eyewitnesses; but this does not alter the fact that the inherent nature of the two kinds of evidence is different, nor the other fact that the only thing which invests mere circumstances with force of proof is the absolute exclusion of every other reasonable hypothesis than that of guilt. We are of the opinion, therefore, that the statement which we have criticised in this instruction is a fundamental misconception, and, in this character of case, may most likely have mislead the jury and contributed materially to the verdict.

The clear difference between circumstantial evidence and direct evidence is pointed out by Prof. Wigmore in the first volume of his work on Evidence (section 25), in a quotation from Wills on Circumstantial Evidence, cited with approval by him as follows: "The different writers, ancient and modern, on the subject of Evidence, have concurred in treating circumstantial evidence as inferior in cogency and effect to direct evidence, a conclusion which seems to follow necessarily from the very nature of the different kinds of evidence." And Mr. Wills points out the fallacy of Mr. Paley's declaration "that circumstances cannot lie"; that fallacy being that, if you concede certain facts, of course the facts do not lie, but whether the facts existed depends on the truthfulness of the witnesses deposing to the facts. That is just the point we make. There may be ten links in the chain of circumstantial evidence offered to convict the defend-

ant.   Each one of these links, or circumstances, is testified to by witnesses; and the difference, therefore, is, where the question is whether the defendant killed the deceased, that, if the testimony be direct, the killing may be established by the clear testimony of a single eyewitness; whereas, if the evidence be circumstantial, a number of witnesses necessarily must be examined to make out every link in the chain, every circumstance in the series, before the jury will be warranted in deducing, from the circumstances, the conclusion that the defendant did the killing.   The popular mind recognizes the essential difference. When the men constituting the jury are told by the court in so many words that circumstantial evidence is as good as any other kind of evidence, that declaration is tantamount exactly to telling the jury that there is no difference between the nature of circumstantial evidence and the nature of direct testimony, a wholly misleading statement.   We have so often said that the old paths are the safe paths, and the correct charge in a case of circumstantial evidence has been so long crystallized and stereotyped, by decisions in this state and elsewhere, that it is astonishing that a charge containing this sort of statement should be experimentally tried.

It will not stand the test, and for the error in giving it, and for the error in refusing to allow the witness Gertrude Evans to make answer to the questions indicated, the *judgment is reversed, and the cause remanded for a new trial.*