DeLoach *et al.* v. State.*

(Division B.   June 4, 1928.)

[117 So. 361.   No. 27221.]

86

*Corpus Juris-Cyc. References: Homicide, 30CJ, p. 168, n. 14; p. 322, n. 65; Flight of accused as circumstance tending to show guilt, see annotation in 25 A. L. R. 887; 8 R. C. L. 192; 2 R. C. L. Supp. 271; 4 R. C. L. Supp. 533; 5 R. C. L. Supp. 451; 6 R. C. L. Supp. 492.

*W. C. Adams* and *G. C. Moreland,* for appellants.

*J. A. Lauderdale,* Assistant Attorney-General, for the state.

ANDERSON, J. Appellants were indicted and convicted in the circuit court of Alcorn county of the murder of Tom Reid, and sentenced to the penitentiary for the period of their lives, from which judgment they prosecute this appeal.

Appellants are young men. The deceased was an old man. Deceased was a stranger in the neighborhood in which he was killed. He and appellants had never met, so far as the evidence shows, until the day of the murder. The deceased was traveling afoot on a public highway. He was overtaken, robbed of ten dollars, and shot to death. He made a dying declaration, testified to by Arthur Butler and other witnesses, substantially to the following effect: That on the day of the murder he took dinner at the home of Arthur Deloach, where he met the appellants, Reuben Deloach, Bynum Deloach, and Herman Reardon; that appellants took dinner with him at the same place; that while there, deceased accused appellants of stealing

a razor from him; that this accusation resulted in a quarrel between the deceased on the one hand and appellants on the other; that, as a result of this altercation, deceased decided to leave on his journey, and did leave, going up the highway north; that the deceased saw indications that appellants were following him, and picked up two rocks as weapons of defense, and put them in a sack which he was carrying; that on his way he sat down to rest under a tree, and that while there appellants came up, two of them taking hold of him, and the third robbing him of ten dollars in money; that he made an effort to jerk loose from them, and one of them, the largest of the three, shot him; that thereupon he went to the house of Maud Butler, near by. It was in this home that he made this dying declaration. Deceased did not know the names of the appellants. He stated that one of them called another one of them ''Reuben.'' (Reuben Deloach is the name of one of the appellants.) The deceased, in his dying declaration, described the place where he took dinner as the third house from the one on the top of the hill. The evidence tended to show that this was the home of Arthur Deloach. In addition to the dying declaration of the deceased, Mrs. Alma Osborn testified that about one o'clock in the afternoon of the day of the murder she saw an old man pass her home; that she did not know him, but saw him after the shooting and identified him as the deceased, Tom Reid; that a few minutes after he passed, appellants, Reuben and Bynum Deloach and Herman Reardon, passed, following the deceased, or at least going in the same direction he was going; that as they passed along in front of her house, she heard Reuben Deloach say that he was going to pull off his shoes and run and watch the deceased; that thereupon appellant Reuben Deloach did pull off his shoes, and proceeded at a rapid rate down the road in the direction the deceased was going; that later the witness went to where he pulled his shoes off and found them, but after the shooting she went

back and looked for the shoes and they were gone. Eva Butler and Stella Nichols, ages nine and ten, respectively, testified that they were at Bruce Nichols' barn, about half a mile from the scene of the murder; that they saw an old man pass shortly before the murder, whom they later identified as being the deceased; that, in a few minutes after the deceased passed, three men passed, going in the same direction, two of whom were appellants Reuben Deloach and Herman Reardon; that shortly after they passed the witnesses heard two shots fired. Homer Briggs and Howard testified that they saw appellants, shortly after the murder, not far away from the scene of the murder, near the Dunn place. Coleman, sheriff of Alcorn county, testified that he examined the place of the murder; that he saw tracks which indicated that three men, besides the deceased, were present at the murder, two with shoes on and one barefooted; that he followed these tracks a short distance north of the scene of the crime, and there they turned east, and he could not track them farther.

Appellants' defense was an *alibi*. They testified that, although they were together at or about the time the murder was committed, they were not at the scene, but elsewhere. Appellants contend that the evidence was insufficient to sustain a verdict of guilty. It is true that the evidence of appellants' guilt is entirely circumstantial, but we think it was sufficient to go to the jury. It made an issue for the jury to determine, not the court.

Mrs. Butler was testifying as a witness for the state. On cross-examination, appellants sought to show by her that one Jack Dunn, who occupied the home on top of the hill, from which Arthur Deloach's home was the third, going north, had fled the country immediately after the murder. The court refused to admit the testimony, which action of the court appellants excepted to and assign and argue as a ground for reversal of the judgment in this case. To sustain their position, appel-

lants rely on the case of *Haywood* v. *State,* 90 Miss. 461, 43 So. 614, in which the court held that:

"Where the accused in a prosecution for murder resting entirely on circumstantial evidence has introduced testimony which would prove an *alibi,* if credited, it is error not to admit evidence to the effect that disreputable characters in whose company the deceased had been on the night of his death left the state on the following day."

At the time appellants sought to prove, on the cross-examination of Mrs. Butler, that Jack Dunn lived in the house on the top of the hill, and had fled the state immediately after the murder, there was no evidence in the case whatever tending to connect Jack Dunn in any manner with the murder. And appellants did not state to the court that they expected to so connect him by testimony to be afterwards offered. The evidence on behalf of the state did not tend to show that Jack Dunn had a hand in the murder. When that fact was developed by appellants' testimony, they should have again offered the testimony, through Mrs. Butler, which the court had ruled out over their objection. This they failed to do. The trial court cannot be put in error without an opportunity to rule. It had only one opportunity of ruling on this question, and, at that time, its ruling was clearly right.

We find no reversible error in the case.

*Affirmed.*